## GREEN v. JACKSON.

### No. 12296.

Court of Civil Appeals of Texas. Dallas.

Jan. 8, 1938.

Rehearing Denied Feb. 5, 1938.

Edwin M. Fulton and King, Wheeler & Fulton, all of Texarkana, for appellant.

Dallas C. Biggers, Durward D. Mahon, and Chandler Lloyd, all of Dallas, for appellee.

YOUNG, Justice.

Appellee recovered judgment in the trial court against appellant for debt in the sum of $5,000 with legal interest from February 3, 1932, growing out of an alleged sale of 200 shares of stock of the Faith Oil Corporation at $25 per share. Appellant's pleadings, upon which issue was joined, were in substance that, at and before the date mentioned, he owned and had on hand for sale $120,000 in value of the stock of the Faith Oil Corporation, par value $25 per share; that at said time appellant was endeavoring to maintain the market price of said stock, when he was informed by appellee of a block of said stock that could be purchased at one-half price, or $5,000; that appellant delivered to appellee a check in such amount for the purchase of said outside stock; further, that such transaction was never consummated, and the check in question became worthless and was destroyed by appellee. Appellant denied any dealings with appellee where 200 shares of stock were ever purchased, and by trial amendment alleged that the check sued on was based on an illegal transaction, and contrary to public policy, under the admitted testimony of appellee; failure of any consideration for said stock was also pleaded.

Appellee testified that the indebtedness of appellant to him arose by reason of an unpaid check given to him (appellee) as the purchase price of 200 shares of said stock (the personal property of appellee at the time), which stock was delivered to appellant in consummation of such sale. The further testimony of appellee was to the effect that he had previously rendered services to the Faith Oil Corporation, and to appellant, its president, in the sale of subscription stock on a 25 per cent. commission basis; such services being in other respects beneficial to the corporation and appellant in the oil business, and that in settlement for all of such services, the 200 shares of stock were assigned to him; that later appellant bought such stock from appellee, along with some oil payments running with the stock, giving the check which became the subject of the original suit.

Appellant's assignments of error in the main are that, as a matter of law, under all the testimony, appellee could not recover on said check, for that it was given under circumstances that rendered it void, and wholly without consideration, (1) because the 200 shares of stock in question, which appellee sold to appellant, were given by the Faith Oil Corporation for services of the appellee in sales of stock on a 25 per cent. commission, prohibited by law, hence no title passed to appellee that he could assign to appellant in consideration for the $5,000 check; (2) the corporation involved had no permit to sell stock, under the Blue Sky Law, Article 579 et seq. Rev.St.1925, Laws of 1923, 2d Called Sess., p. 114, nor did appellee, hence all transactions involving said stock were void, and without good or valuable consideration; and (3) there was no endorsement or assignment of the particular stock to appellant on the reverse thereof, or by separate instrument at the date of sale, therefore, no title passed and appellant received no consideration for said check.

We have given careful study to all of appellant's assignments and supporting propositions, and are of the opinion that same should be overruled. Even assuming the 25 per cent. commission contract, for the sale of Faith Oil Corporation stock, to be illegal and contrary to the statutes, yet there was ample testimony in the record for the trial court to conclude that such contract was fully performed by a regular transfer and delivery to appellee of the 200 shares of stock in question. The transaction involved here was simply the sale of such stock to appellant. As appellee properly pointed out, this was not a suit to recover the 25 per cent. illegal commission for sales of stock,

but was one for recovery of the consideration for the resale of such 200 shares, which had been regularly issued and delivered to appellee, in full settlement of said alleged illegal 25 per cent. commission contract. After the so-called illegal transaction had been voluntarily executed between the parties thereto, and tangible rights accrued to one of them, by reason of the executed nature of the tainted contract, courts will not refuse to enforce those property rights which have subsequently arisen.

In 10 Tex.Jur. 233, Contracts, § 135, is clearly stated the principle of law here involved: "But illegal contracts are not void in the sense that they do not confer legal rights, since they may be executed by voluntary acts of the parties, or through some means or agency other than the courts, and, when so executed, they may confer actual and irrevocable rights upon the parties; and this is true of a contract made in contravention of a statute which declares that contracts so made shall be absolutely void and unenforceable." Citing authorities.

■ Appellant argues in his rather belated reply brief that appellee was required to testify to the alleged illegal commission contract as the sole basis of his title, in order to support a recovery on the check. Appellant's petition in the trial court nowhere referred to a 25 per cent. commission agreement with the corporation, but was simply upon a check for $5,000, regular in form, signed by appellant, and contained the recital that it was for an oil payment and 200 shares of stock of the Faith Oil Corporation. Such stock at the time stood in the name of appellee on the books of the corporation, and appellee had actual possession of certificates, Nos. 275 and 276, each for 100 shares of the capital stock. Appellee then having legal title and full possession of such stock, no resort to said illegal contract was necessary for appellee to convey every indicia of ownership to appellant. Appellee's title to the stock, though arising out of the alleged illegal contract, was not dependent upon it. He could point to the books of the corporation and to his actual possession of the shares, in support of his legal and complete title, and consequently, "a title or estate so resulting from, and arising out of, the illegal contract, fully executed, will be recognized by the courts; the recognition involving no reference to, or action upon, the contract itself." Hall v. Edwards, Tex.Com.App.,

222 S.W. 167, 169. The facts in the record here, in support of the judgment of the trial court, are even stronger than in the Hall-Edwards Case, supra. Here appellee had both title and possession of the shares; in the Hall Case, above, the plaintiff had title to the real estate, following deed of trust sale, but not possession; the Commission of Appeals there holding that Hall's trust deed, though growing out of the sale under an admittedly illegal deed of trust, could be enforced in the courts. Judge Sonfield, speaking for the court, said: "Where parties to such an illegal contract, in dependence thereon, seek the aid of the court to create in them the right of possession, the court will refuse its aid. But where such parties establish an existent right of possession, needing the aid of the court, not for its creation but only for its enforcement, such aid will not be denied them. The right of possession is an incident to, and grows out of, the title. The title vested in plaintiff in error through the trustee's deed. It was as perfect, upon the due execution and delivery of the deed, as though he had been placed in actual, pedal possession of the land."

■ What we have stated above sufficiently answers the contention of appellant, that the judgment below was improper because the Faith Oil Corporation had not a permit to sell its stock; nor did the Blue Sky Law, in force at the time of these transactions, require a permit for the resale of privately owned stock, such as appears to be the situation of appellee here.

■■ Appellant further urges that there was no assignment, indorsement, or transfer of the stock to him, hence no title passed or consideration for the check sued upon. The shares of stock were handed to appellant, under testimony in the record, which were later canceled by the corporation. Appellant was president of the concern, and though such may have been an incomplete transfer, yet appellant took such equitable title and possession as could have enforced a legal transfer on the books of the corporation. The trial court's judgment undoubtedly effectuated appellant's title to the stock. Certainly, the rights of appellee have been foreclosed by judgment and the corporation is in no position to complain, in the absence of adverse claims.

■ Appellant's further assignments are to the effect that the check sued on was wholly without consideration. No findings of fact appear to have been requested or

filed by the trial court. Testimony was adduced, under which it could be properly found that appellee did sell to appellant the said 200 shares of stock and an oil payment for the consideration of the $5,000 check. Facts necessary to support a judgment will be presumed to have been found by the court, provided the finding was authorized by the evidence. 3 Tex.Jur. 1063, Appeal and Error, § 750. Judgment of the trial court will be affirmed.

Affirmed.